UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LISA GALLAGHER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. NO. 1:13-cv-00038-M-LDA |
| | ) | |
| ASSET MANAGEMENT WEST | ) | |
| 10, LLC, ALIAS, MORTGAGE | ) | |
| ELECTRONIC REGISTRATION | ) | |
| SYSTEMS, INC., ALIAS, WEST | ) | |
| COAST SERVICING, INC., ALIAS | ) | |
| KENAN THAYER, ALIAS, AND | ) | |
| JOHN DOE, ALIAS, | ) | |
| Defendants. | ) | |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, defendants Asset Management West 10, LLC, West Coast

Servicing, Inc., and Kenan Thayer (collectively "Defendants") submit this Memorandum of Law

in support of their Motion for Summary Judgment.

## I.     INTRODUCTION

By this action, plaintiff Lisa Gallagher ("Gallagher") seeks to prevent a foreclosure sale

of real property in North Providence, Rhode Island where the underlying mortgage loan has been

in default since 2008.  Yet, this is not the first time Gallagher has attempted to prevent defendant

Asset Management West 10, LLC ("Asset Management") from enforcing its right to foreclose on

the mortgage that secures the subject property.  In a previous Chapter 13 bankruptcy proceeding,

Gallagher opposed a motion for relief from stay filed by Asset Management.  The parties then

stipulated to an agreement pursuant to which Gallagher agreed, *inter alia*, that Asset

Management had standing to enforce the Statutory Power of Sale contained within the subject

mortgage and would be entitled to relief from stay if she defaulted under the agreement.

1

Thereafter Gallagher did default under the stipulation, and Asset Management obtained relief from the automatic stay.  The Order granting relief from the automatic stay is a final judgment for *res judicata* purposes, and Gallagher's claims are precluded as a matter of law.   Further, even assuming Gallagher's claims are not barred, Defendants are nevertheless entitled to summary judgment because there are no genuine issues of fact and Defendants are entitled to judgment as a matter of law.

## II.   FACTUAL BACKGROUND

On April 28, 2006, Gallagher and Margaret Robertson granted a $265,000 mortgage ("Mortgage") on 74C Valley Green Court, North Providence, Rhode Island ("Property") in favor of defendant Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for defendant Mortgage Lender's Network ("Lender").  (Complaint at ¶ 9; *id.*, Ex. A)  A true and accurate copy of the Mortgage is attached to the Affidavit of Kenan Thayer (submitted herewith) ("Thayer Affidavit") as Exhibit 1.  The Mortgage identifies MERS as the mortgagee and states that "MERS is a separate corporation that is acting solely as nominee for the Lender and Lender's successors and assigns."  (Mortgage, p. 1)  On April 28, 2006, Margaret Robertson executed a $265,000 promissory note ("Note") in favor of Lender, which was secured by the Mortgage.  (Thayer Affidavit at ¶ 6)   A true and accurate copy of the Note is attached to the Thayer Affidavit as Exhibit 2.

On or about June 4, 2008, Asset Management purchased Robertson's loan and became the holder of the Note and Mortgage.  (Thayer Affidavit at ¶ 7)  On or about July 24, 2009, MERS assigned the Mortgage to Asset Management via an Assignment of Mortgage. (Complaint, Ex. B; Thayer Affidavit at ¶ 8)  A true and accurate copy of the Assignment of Mortgage is attached to the Thayer Affidavit as Exhibit 3.  The Assignment of Mortgage was

executed by defendant Kenan Thayer ("Thayer") in his capacity as Assistant Secretary and Vice President of MERS.  (Thayer Affidavit at ¶ 9)  Thayer's signature was notarized by a notary public.  (*Id.*)  Thayer's authority to act on behalf of MERS is memorialized in a certain MERS Corporate Resolution dated April 30, 2007.  (Thayer Affidavit at ¶ 10)  A true and accurate copy of the Corporate Resolution is attached to the Thayer Affidavit as Exhibit 4.

On or about April 1, 2008, Gallagher defaulted on the Mortgage by, *inter alia*, failing to make the monthly payments required thereunder.  (Thayer Affidavit at ¶ 11)  The underlying loan is due for the March 1, 2010 monthly installment payment.  (Thayer Affidavit at ¶ 12)  On June 3, 2009, Asset Management's counsel sent Gallagher a notice of default letter ("Default Notice")  which stated, *inter alia*, that: (1) Gallagher was in default for breach of the Note and Mortgage, "including the failure to make monthly payments due under the Note;" (2) Gallagher could cure the default by paying $31,933.76 to Asset Management on or before July 3, 2009; and (3) Gallagher's failure to cure the default on or before July 3, 2009 might result in the balance of the Note being accelerated and sale of the Property.   (Affidavit of Peter Lawton (submitted herewith) ("Lawton Affidavit") at ¶ 6; *id.*, Ex. 1)  A true and accurate copy of the Default Notice is attached to the Lawton Affidavit as Exhibit 1.  On August 5, 2009, Asset Management's counsel sent Gallagher a letter enclosing a Notice of Mortgagee's Sale ("First Notice of Sale").  (Lawton Affidavit at ¶ 7)  A true and accurate copy of the First Notice of Sale is attached to the Lawton Affidavit as Exhibit 2.

On August 14, 2009, Gallagher filed a petition for relief under Chapter 13 of the United States Bankruptcy Code.  *See In re Lisa A. Gallagher*, Case No. 09-13159 (Bankr. D.R.I.) (the "Bankruptcy Action").  On December 9, 2009, Asset Management moved for relief from the automatic stay pursuant to 11 U.S.C. § 362 for the purpose of exercising its rights pursuant to the

3

Note and Mortgage.  *See* Bankruptcy Action, ECF No. 26.[1]  On December 28, 2009, Gallagher

filed a response to the Motion for Relief.  *See id.*, ECF No. 34.[2]  In her Response, Gallagher

admitted that Asset Management was the present holder of the Note and Mortgage.  (Response,

¶ 2)  On February 15, 2010, Gallagher and Asset Management jointly submitted a Stipulation on

Asset Management West 10, LLC's Motion for Relief from Stay ("Stipulation).  *See* Bankruptcy

Action, ECF No. 53.[3]  Pursuant to the Stipulation, the parties agreed that Gallagher would make

certain payments to Asset Management and that Gallagher's failure to make the required

payments would entitle Asset Management to an Order granting the Motion for Relief.

(Stipulation, pp. 1-2)  The bankruptcy court approved the Stipulation on February 17, 2010.  *See*

Bankruptcy Action, ECF No. 54.

On June 30, 2010, Asset Management's counsel filed an Affidavit of Non-Compliance

attesting to Gallagher's failure to comply with the Stipulation and seeking entry of an order

granting relief from the automatic stay in accordance with the Stipulation.  *See id.*, ECF No. 75.[4]

Gallagher did not file a response to the Affidavit of Non-Compliance.  On July 21, 2010, the

bankruptcy court entered an order granting the Motion for Relief ("Order").  *See id.*, ECF No.

77.[5]  Gallagher did not move for reconsideration of the Order and did not appeal the Order.

On August 24, 2012, Asset Management's counsel sent Gallagher a letter enclosing a

Notice of Default and Mortgagee's Right to Foreclose and Notice of Availability of Mortgage

---

[1] A copy of the Motion of Asset Management West 10, LLC for Relief from the Automatic Stay pursuant to 11 U.S.C. § 362 ("Motion for Relief") is attached as Exhibit 1 to the Declaration of Shanna Boughton (submitted herewith).

[2] A copy of Debtor's Response to Asset Management West 10 LLC's Motion for Relief from the Automatic Stay ("Response") is attached as Exhibit 2 to the Declaration of Shanna Boughton.

[3] A copy of the Stipulation (as approved by the bankruptcy court) is attached as Exhibit 3 to the Declaration of Shanna Boughton.

[4] A copy of the Affidavit of Non-Compliance is attached as Exhibit 4 to the Declaration of Shanna Boughton.

[5] A copy of the Order is attached as Exhibit 5 to the Declaration of Shanna Boughton.

Counseling Services pursuant to R.I. Gen. Laws § 34-27-3.1 ("Notice of Intent to Foreclose").

(Lawton Affidavit at ¶ 8)  A true and accurate copy of the Notice of Intent to Foreclose is

attached to the Lawton Affidavit as Exhibit 3.  On November 30, 2012, Asset Management's

counsel sent Gallagher a letter enclosing a Notice of Mortgagee's Sale ("Second Notice of Sale")

to Gallagher.  (Lawton Affidavit at ¶ 9)  A true and accurate copy of the Second Notice of Sale is

attached to the Lawton Affidavit as Exhibit 4.  The foreclosure sale has not yet occurred.

(Lawton Affidavit at ¶ 10)

### III.   LEGAL STANDARD

A motion for summary judgment is to be granted if "there is no genuine issue as to any

material fact and ... the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

In evaluating the record to decide whether there is a genuine issue of material fact, "[t]he

evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his

favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).  Further, the moving party

bears the burden of demonstrating that there is no triable issue of fact.  *Celotex Corp. v. Catrett,*

477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to show that a trier of

fact could reasonably find in the non-moving party's favor.  *Id.* at 322-25.

### IV.   ARGUMENT

**A.**   ***Gallagher's complaint is barred by the doctrine of res judicata or claim***
      ***preclusion because of the prior bankruptcy court Order.***

Gallagher's complaint addresses claims that were brought, or rightfully should have been

raised, in the Bankruptcy Action and therefore, are barred.  "Under federal law, the doctrine of

*res judicata* dictates that a final judgment on the merits of an action precludes the parties or their

privies from relitigating issues that were or could have been raised in that action." *Perez v.*

*Volvo Car Corp.*, 247 F.3d 303, 311 (1st Cir. 2001) (quoting *Allen v. McCurry*, 449 U.S. 90, 94

(1980)); *see also Huntley v. State*, 63 A.3d 526, 531 (R.I. 2013) (The doctrine of *res judicata* "bars the relitigation of all issues that 'were tried or *might have been tried*' in an earlier action." (quoting *Bossian v. Anderson*, 991 A.2d 1025, 1027 (R.I. 2010)) (emphasis added)). The doctrine is an absolute bar to the second cause of action when there exists: (1) finality of judgment in the earlier action; (2) identity of parties or their privies in the two suits; and (3) identity of issues. *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir. 1994) (citing *Aunyx Corp. v. Canon U.S.A., Inc.*, 978 F.2d 3, 6 (1st Cir.1992), cert. denied, 507 U.S. 973 (1993)). Here, the prerequisites for application of the doctrine of *res judicata* are easily met.

### 1. *Finality of Order Granting Relief from Stay.*

"An order granting relief from stay is a final order." *In re Rodriguez Camacho*, 361 B.R. 294, 299 (1st Cir. 2007) (citing *Caterpillar Fin. Servs. Corp. v. Braunstein (In re Henriquez)*, 261 B.R. 67, 70 (1st Cir. 2001)); *Reynolds v. First NLC Financial Services, LLC*, --- A.3d ---, 2014 WL 105121, at *4 (R.I. Jan. 10, 2014). Here, the bankruptcy court not only granted relief from stay, but the parties expressly agreed to the entry of the Order pursuant to the Stipulation. Accordingly, there is no genuine dispute that the Order constitutes a final judgment for claim preclusion purposes.

### 2. *Identity of the Parties.*

Determining whether there is "identity of parties" requires resolving "whether the parties to this second action are identical to or in privity with the parties" in the first action. *E.W. Audet & Sons, Inc. v. Firemen's Fund Insurance Company of Newark, New Jersey*, 635 A.2d 1181, 1186 (R.I. 1994) (citations omitted); *Petitioning Creditors of Melon Produce, Inc. v. Braunstein*, 112 F.3d 1232, 1240 (1st Cir. 1997) (("Under res judicata, a final judgment on the merits of an action precludes the parties *or their privies* from relitigating issues that were or could have been

raised in that action.") quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (emphasis added)). Privity exists where there is "a commonality of interest[s]" such that one party adequately represents the other's interests. *Lennon v. Dacomed Corp.*, 901 A.2d 582, 591 (R.I. 2006).

Here, Gallagher and Asset Management were both parties in the Bankruptcy Action. Thus, the "identity" requirement is met with respect to Asset Management. Further, West Coast is in privity with and closely related to Asset Management because it services the loan on Asset Management's behalf. *R.G. Financial Corp. v. Vergara-Nunez*, 446 F.3d 178, 187 (1st Cir. 2006). Likewise, MERS and Thayer are in privity with and closely related to Asset Management given that Defendants "share a common interest in this Court's determination that the Mortgage assignment[ was] valid." *Smith v. Mortg. Electronic Registration Systems, Inc.*, No. PC 2010-0431, 2013 WL 1090816, at *4 (R.I. Sup. 2013); *see also Airframe Systems, Inc. v. Raytheon Co.*, 601 F.3d 9, 17 (1st Cir. 2010) ((Where "'the [later] claims were or could have been brought against the original defendant in the original suit' and the subsequent suit tried to hold related defendants liable on related claims," claim preclusion bars the subsequent lawsuit.) quoting *Negrón-Fuentes v. UPS Supply Chain Solutions*, 532 F.3d 1, 10 (1st Cir. 2008)). Therefore, there is "identity of the parties" between the Bankruptcy Action and the present matter.

### 3.  Identity of Issues.

The third requirement necessary to apply the doctrine of *res judicata* is "identity of issues." *Grella*, 42 F.3d at 30. "[C]laim preclusion [ ] bars the relitigation of any issue that was, or *might have been*, raised in respect to the subject matter of the prior litigation," *id.*, 42 F.3d at 30 (quoting *Dennis v. Rhode Island Hosp. Trust*, 744 F.2d 893, 898 (1st Cir. 1984) (emphasis in original)). Where the parties in a bankruptcy proceeding a stipulate to the validity of a lien to resolve a motion for relief from stay, the debtor is precluded from subsequently contesting the validity of the lien. *See id.* at 35 (" We agree with the Trustee that the parties' express agreement

7

was the crux of the *Monument Record* court's ruling, and find that decision is logically limited to those unique circumstances.") (citing with approval *In re Monument Record Corp.*, 71 B.R. 853 (Bankr. M.D. Tenn. 1987)); *see also In re Mallows*, 344 B.R. 207, 216 (Bankr. D. Mass. 2006) (holding that stipulation confirming bank's security interest was entitled to preclusive effect).

Here, the issue of Asset Management's standing to enforce the Note and Mortgage was, or certainly could have been, litigated in the Bankruptcy Action. Asset Management's Motion for Relief was premised on it being the "present holder of the Note and the Mortgage." (Motion for Relief, ¶ 2). Gallagher conceded this fact in her Response. (Response, ¶ 2) Similarly, Gallagher agreed that in the event of her default under the Stipulation, Asset Management would be entitled to relief from the stay for the express purpose of exercising "its rights pursuant to the Note and Mortgage and applicable state and federal law and to commence a summary process action against the occupants of that property. (Stipulation, p. 2; Motion for Relief from Stay, p. 2) After Gallagher defaulted under the Stipulation, Asset Management moved for and obtained relief from the automatic stay. Gallagher did not object, and never sought review of the bankruptcy court's order granting relief from the stay.

In the present action, Gallagher also asserts a breach of contract claim. This claim is also barred as it could have been raised in the Bankruptcy Action. "To determine if the earlier and later claims were sufficiently identical, the First Circuit in *Manego v. Orleans Bd. of Trade* adopted the 'transactional' test for res judicata." *Koolen v. Mortgage Electronic Registration Systems, Inc.*, 953 F.Supp.2d 348, 352 (D.R.I. 2013) (citing 773 F.2d 1, 5 (1st Cir.1985)). "The transactional test dictates that claims are identical so as long as the new complaint grows out of the same transaction or series of connected transactions as the old complaint." *Id.* (internal citations and quotations omitted).

8

Here, Gallagher's claim for breach of contract (Count II) arises from the same transaction, *i.e.* the assignment of the Mortgage from MERS to Asset Management, and Asset Management's and West Coast's subsequent efforts to exercise the Statutory Power of Sale pursuant to the Mortgage. As this claim could have properly been raised in the Bankruptcy Action, it is barred in the present action.

### B.      *Gallagher's claims fail as a matter of law.*

Even assuming *arguendo* that Gallagher's claims are not precluded by the doctrine of *res judicata*, Defendants are nonetheless entitled to summary judgment because there are no genuinely disputed facts and Gallagher's claims fail as a matter of law. *First*, Gallagher's claim for a declaratory judgment that "Defendants" lack standing to exercise the Statutory Power of Sale because MERS assigned the Mortgage to Asset Management is untenable in the wake of the First Circuit's decision in *Culhane v. Aurora Loan Services*, 708 F.3d 282 (1st Cir. 2013) which has been cited with approval by the Rhode Island Supreme Court. *See Bucci v. Lehman Brothers Bank, FSB*, 68 A.3d 1069, 1088 (R.I. 2013). *Second*, Gallagher's breach of contract claim fails because West Coast complied with Paragraph 22 of the Mortgage by providing Gallagher with the requisite notice and opportunity to cure her default. *Third*, Gallagher's claim that West Coast violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") fails because non-judicial foreclosure activity such as that alleged by Gallagher is not regulated "debt collection" activity under the FDCPA. Further, West Coast never communicated with Gallagher during the relevant time period. Moreover, Gallagher's FDCPA claim is premised on the same erroneous theory that Asset Management and West Coast lack standing to enforce the Mortgage. *Fourth*, Gallagher is not entitled to injunctive relief or damages because there is no likelihood of her succeeding on the merits of any of her claims.

1.    **Defendants have standing to exercise the Statutory Power of Sale (Count I).**

The statutory power of sale contained in R.I.G.L. § 34-11-22 grants a mortgagee, its successors or assigns, the authority to sell the mortgaged premises if the mortgagor is in default. In *Culhane*, the First Circuit unequivocally confirmed that MERS, in its nominee capacity, has the authority to assign mortgages:

> We conclude, without serious question, that MERS validly held the mortgage on the plaintiff's premises at the time of the assignment to Aurora. This leads to two further conclusions: the assignment was valid, and Aurora properly exercised the statutory power of sale as both the holder of the mortgage and the loan servicer for the noteholder.

708 F.3d at 294.

Approximately two months after the First Circuit rendered the *Culhane* decision, the Rhode Island Supreme Court confirmed that the MERS framework comports with Rhode Island law. *Bucci v. Lehman Brothers Bank, FSB*, 68 A.3d 1069, 1088 (R.I. 2013) citing with approval *Culhane*, 708 F.3d at 292.  In December 2013, the Rhode Island Supreme Court confirmed that MERS has the capacity to assign mortgages in its nominee capacity.  *Mruk v. Mortgage Electronic Registration Systems, Inc.*, 82 A.3d 527, 537 (R.I. 2013).  Thus, there is no genuine dispute concerning MERS's authority to assign the Mortgage to Asset Management.

Defendants anticipate that Gallagher will point to the Rhode Island Supreme Court's decision in *Chhun v. Mortgage Electronic Registration Systems, Inc.*, --- A.2d ---, 2014 WL 358934 (R.I. Feb. 3, 2014) as grounds to deny Defendants' Motion for Summary Judgment. However, *Chhun* is inapposite for several reasons.  As a preliminary matter, *Chhun* involved the adjudication of a motion to dismiss, not a motion for summary judgment.  Accordingly, whereas

the well-pled facts in the complaint were required to be taken as true, Gallagher's

unsubstantiated allegations are entitled to no such deference at the summary judgment stage.

Further, the *Chhun* decision did not address the critical distinction between void and

voidable interests as it relates to a mortgagor's standing to challenge the validity of an

assignment of mortgage.  In order for a mortgagor to have standing to challenge an assignment

of mortgage "such a challenge [must be] necessary to contest a foreclosing entity's status qua

mortgagee." *Culhane*, 708 F.3d at 291.  The First Circuit recently clarified the *Culhane* decision

by emphasizing that "a mortgagor has standing **only** 'to challenge a mortgage assignment as

invalid, ineffective or void (if, say, the assignor had nothing to assign or had no authority to

make an assignment to a particular assignee).'" *Wilson v. HSBC Mortg. Svcs, Inc.*, --- F.3d ---,

2014 WL 563457, *5 (1st Cir. Feb. 14, 2014) (quoting *Culhane*, 701 F.3d at 291) (emphasis in

original).[6]  On the other hand, "a mortgagor does not have standing to challenge shortcomings in

an assignment that render it merely ***voidable at the election of one party*** but otherwise effective

to pass title." *Mruk*, 82 A.3d at 536 (quoting *Culhane*, 708 F.3d at 291) (emphasis added).   It is

well-settled that challenges to the authority of the person signing an assignment on behalf of a

corporation can merely render the assignment ***voidable***.[7]  *See Bowen v. Johnson*, 24 A. 830, 831

(R.I. 1892); *Duncan Shaw Corp. v. Standard Mach. Co.*, 196 F.2d 147, 152-154 (1st Cir. 1952)

(holding under Rhode Island law that contract executed on behalf of a corporation without

---

[6] Although the *Culhane* and *Wilson* decisions both interpret Massachusetts law, the Rhode Island Supreme Court has held that the reasoning of the *Culhane* decision is applicable with equal force under Rhode Island law. *See Mruk*, 82 A.3d at 536 (citing *Culhane*, 708 F.3d at 291).

[7] Since *Culhane*, courts that have applied the void/voidable standing exception to mortgagor complaints have held that similar facially deficient challenges to the individual signing the document were not "void challenges" under *Culhane*. *See, e.g., Orellana v. Deutsche Bank Nat'l Trust Co.*, No. 12-11982-NMG, 2013 WL 5348596, at *6 (D. Mass. Aug. 30, 2013) (allegations that assignments were defective because not signed by individuals with requisite authority would not make assignments void under *Culhane*); *DTND Sierra Invs., LLC v. Bank of NY Mellon Trust Co.*, NA., No. 12-cv-1014, 2013 WL 3894946, at *4 (W.D. Tex. July 26, 2013) (same under Texas law). Texas law is in accord with Rhode Island law in that a borrower may only challenge a void mortgage assignment and not a voidable one. *See DTND Sierra Invs., LLC*, 2013 WL 3894946, at *4.

11

shareholder authority was not void, but merely voidable) (citing *Bishop v. Kent & Stanley Co.*, 41 A. 255, 257 (R.I. 1898)); Restatement (Second) of Contracts § 7 ("a principal is free to affirm or to disavow the unauthorized promises of its agent, and thus contracts entered into by the agent acting beyond the scope of his authority *are not void but are voidable by the principal*.") (emphasis added); *see also Sabourin ex rel. Sabourin v. LBC, Inc.*, 731 F. Supp. 1151, 1155 (D.R.I. 1990) (where father executed agreement on behalf of son without proper authority, "such agreement is not entirely void, but is voidable only").[8]  Here, the crux of Gallagher's challenge of the Assignment of Mortgage is that MERS's purported agent, Thayer, did not have corporate authority to sign the document.   Thus, only MERS can elect to avoid the Assignment of Mortgage (which it has not and will not do).   Gallagher, an unrelated third party, does not have standing to challenge Thayer's authority to execute the Assignment of Mortgage.[9]

In any event, there is no genuine dispute that Thayer was authorized to execute the Assignment of Mortgage on behalf of MERS notwithstanding the fact that he is an officer of Asset Management.  (Thayer Affidavit at ¶¶ 9-10; *id.*, Ex. 4)  *Culhane*, 708 F.3d at 294 ("While MERS's practice of appointing employees of member firms as certifying officers can be disparaged on policy grounds, such policy judgments are for the legislature, not the courts.");  accord *Mruk*, 82 A.3d at 537.  Moreover, Gallagher's conclusory allegations that the Assignment of Mortgage was fraudulent lack the particularity required under Fed. R. Civ. P. 9(b) and, furthermore, are blatantly contradicted by the plain language of the Assignment of Mortgage. *See Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir.

---

[8] In giving further clarity to its *Culhane* ruling, the First Circuit held in *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349 (1st Cir. 2013), that "claims that merely assert procedural infirmities in the assignment" make the assignment voidable, and as such the borrower lacks standing to assert them. *Id.* at 354.

[9] Reaching the opposition conclusion would mean that non-party mortgagors could conceivably challenge any other voidable act concerning the assignment of mortgage thereby effectively thwarting Rhode Island's legislative mandate in creating a non-judicial foreclosure remedy. Moreover, despite recent opportunities, the General Assembly has refused to enact a judicial foreclosure scheme in favor of the non-judicial scheme.

2000) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.") (internal citation omitted). Indeed, such allegations contradict Gallagher's unequivocal admission in the Bankruptcy Action that Asset Management is the holder of the Note and Mortgage.  (Response, ¶ 2)

In sum, there is no genuine dispute that Asset Management, as the note holder and mortgagee, and West Coast, as loan servicer, have standing to exercise the Statutory Power of Sale contained within the Mortgage.

> **2.     Defendants complied with the notice requirements set forth in Paragraph 22 of the Mortgage and, accordingly, did not breach any contract (Count II).**

In order to prevail on a breach of contract claim, Gallagher must prove (1) the existence of a contract; (2) that Gallagher performed her obligations under the contract; (3) that Defendants failed to perform their obligations under the contract; and (4) that the breach caused Gallagher damage.  *Petrarca v. Fid. & Cas. Ins. Co.*, 884 A.2d 406, 410 (R.I. 2005).  Here, Gallagher's breach of contract claim fails because there is no genuine dispute that the only party to have breached the Note and Mortgage is Gallagher.

It is undisputed that Gallagher defaulted on the Note and Mortgage, *inter alia*, by failing to make the payments required thereunder.  It is also undisputed that Gallagher previously agreed, under oath, that Asset Management is entitled to enforce the Note and Mortgage. Nevertheless Gallagher now contends that Asset Management is not entitled to enforce the Note and Mortgage, because "none of the provisions of paragraph 22 of the mortgage were complied with." (Complaint, ¶ 12)  This conclusory assertion is without any factual support either in the Complaint or elsewhere in the record.

In any event, there is no genuine dispute that Asset Management, through counsel, sent Gallagher the June 3, 2009 Default Notice which stated, *inter alia*, that: (1) Gallagher was in default for breach of the Note and Mortgage, "including the failure to make monthly payments due under the Note;" (2) Gallagher could cure the default by paying $31,933.76 to Asset Management on or before July 3, 2009; and (3) Gallagher's failure to cure the default on or before July 3, 2009 might result in the balance of the Note being accelerated and sale of the Property.   (Lawton Affidavit at ¶ 6; *id.*, Ex. 1)   Accordingly, Gallagher's contention that Asset Management failed to provide the requisite default notice under paragraph 22 of the Mortgage is meritless.   Moreover, it is undisputed that Defendants have not actually exercised the Statutory Power of Sale.   Gallagher does not even allege (and cannot demonstrate) that she has been damaged by the issuance of the demand letter or Asset Management's scheduling a foreclosure sale that has yet to occur.

> **3.**      ***Non-judicial foreclosure activity is not "debt collection" as defined by the FDCPA and, in any event, West Coast did not communicate with Gallagher during the relevant time period (Count III).***

Gallagher alleges that West Coast violated two of the FDCPA's provisions. The first, 15 U.S.C. § 1692e, provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."   The second, 15 U.S.C. § 1692f, regulates, *inter alia*, a secured party's enforcement of its security interest.   *Id.* § 1692f(6). Gallagher alleges that West Coast's communications with her regarding Asset Management's intention to conduct a non-judicial foreclosure violated the aforementioned provisions.   There are at least two reasons that Gallagher's FDCPA claim fails.

***First***, the FDCPA only regulates debt collection activities which, with limited exception, does not include a mortgagee's enforcement its security interest.   *Cf. Rosado v. Taylor*, 324

F.Supp.2d 917, 924 (N.D. Ind. 2004) ("Security enforcement activities fall outside the scope of the FDCPA because they aren't debt collection practices."); *see also Fouche' v. Shapiro & Massey L.L.P.*, 575 F. Supp. 2d 776, 783 (S.D. Miss. 2008) ("Under the cited definition, a person whose principal purpose is the enforcement of security interests is a "debt collector" *for the purpose of § 1692f(6),* but is not subject to the rest of the FDCPA unless he also fits § 1692a(6)'s general definition of a debt collector.") (emphasis in original); *Kaltenbach v. Richards,* 464 F.3d 524, 527, 527 n. 3 (5th Cir.2006) (recognizing "distinction between general debt collection and enforcement of a security interest," and observing that "[b]y the plain language of [§ 1692(a)(6) ], ... a person whose business has the principal purpose of enforcing security interests but who does not otherwise satisfy the definition of a debt collector is subject only to § 1692f(6)"). Courts have held that communications concerning non-judicial foreclosure of real property secured by a mortgage is not considered debt collection under the FDCPA. *See Diessner v. Mortgage Elec. Registration Sys., Inc.*, 618 F.Supp.2d 1184 (D. Ariz. 2009), *aff'd* 384 Fed. Appx. 609 (9th Cir. 2010); accord *Tuttle v. Bank of New York Mellon*, 2012 WL 726969, at *3 (W.D. Wash. Mar. 6, 2012). Further, "mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA." *Scott v. Wells Fargo Home Mrtg. Inc.*, 326 F.Supp.2d 709, 718 (E.D. Va. 2003) *aff'd*, 67 Fed.Appx. 238 (4th Cir. 2003). Here, West Coast is not subject to FDCPA liability because it is a loan servicing company engaged in non-judicial foreclosure activity, and is not seeking a personal judgment against Gallagher. (*See* Thayer Affidavit at ¶ 13)

**Second**, the FDCPA claim fails for a more fundamental reason: West Coast never communicated with Gallagher – either orally or in writing – concerning the "debt"[10] during the

---

[10] The term "debt" means "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are

year that preceded the date the Complaint was filed.  (Thayer Affidavit at ¶ 14)  The absence of any communication between West Coast and Gallagher from and after January 17, 2012 precludes FDCPA liability.  *See* 15 U.S.C. § 1692k(d) (FDCPA claims are subject to a one year statute of limitations); *Muir v. Navy Fed. Credit Union*, 783 F. Supp. 2d 19, 22 (D.D.C. 2010) (Debt collector could not be liable to holder of joint checking account for deceptive and misleading representations, in violation of the FDCPA, absent showing that debt collector communicated with account holder, either directly or indirectly).   Although West Coast representatives did communicate intermittently with Gallagher's husband, James Gallagher, concerning *his* proposed purchase of the Note (Thayer Affidavit at ¶ 14), Mr. Gallagher is not a party to this action and does not have standing to assert an FDCPA claim on behalf of Gallagher.

Moreover, even if non-judicial foreclosure activity could constitute debt collection, and even if West Coast's communications with Gallagher's husband were actionable by Gallagher, which is denied, Gallagher's contention that Asset Management and West Coast lack standing to exercise the Statutory Power of Sale is meritless (*see supra*).  *See Speleos v. BAC Home Loans Servicing, L.P.*, 824 F. Supp. 2d 226, 233 (D. Mass. 2011) (dismissing FDCPA claim where loan servicer was authorized to exercise the statutory power of sale set forth in the mortgage); *see also Maynard v. Cannon*, 650 F. Supp. 2d 1138, 1142 (D. Utah 2008) *aff'd,* 401 F. App'x 389 (10th Cir. 2010) ("The intent behind the FDCPA was to prohibit abusive collections practices, not to outlaw foreclosures when there is an express security agreement and breach of an obligation."). In any event, it was Asset Management's counsel, not West Coast that sent the Notice of Intent to Foreclose and Second Notice of Sale.  (Lawton Affidavit at ¶¶ 8, 9)   Gallagher does not (and cannot) allege that West Coast is somehow liable for the acts of Asset Management's counsel,

---

primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5).

especially where such communications were made pursuant to Rhode Island law.  *Fouche'*, 575

F.Supp.2d 776, 787 (S.D. Miss. 2008) (FDCPA does not apply where communications were sent

in accordance with state law that required such communications as a prerequisite to non-judicial

foreclosure).  Consequently, Gallagher's FDCPA claim fails as a matter of law.

### 4.  *Gallagher is not entitled to injunctive relief or damages (Counts IV & V).*

Gallagher's request to enjoin Asset Management from exercising the Statutory Power of

Sale and evicting her from the Property, as set forth in Count IV of the Complaint, is without

merit and should be denied by the Court.  An injunction is an "extraordinary remedy" that a court

will not exercise its discretion to issue until the moving party affirmatively demonstrates "that it

will probably succeed on the merits of its claim."  *In re: State Employees' Unions*, 587 A.2d

919, 925 (R.I. 1991).  The principal prerequisite to obtaining injunctive relief "is the moving

party's ability to prove that it is being threatened with some immediate irreparable injury for

which no adequate remedy at law lies."  *Id.* (citing *Brown v. Amaral*, 460 A.2d 7, 10 (R.I. 1983)

(other citations omitted).

First, Gallagher is precluded from challenging Asset Management's right to enforce the

Note and Mortgage as she previously agreed to an Order that expressly authorized Asset

Management "to exercise its rights pursuant to the Retail Installment and Security Agreement

and Mortgage and applicable state and federal law and to commence a summary process action

against occupants of that property."  (Order, p. 1)

Further, as demonstrated above, all of Gallagher's substantive claims fail as a matter of

law.  As a result, there is no likelihood of Gallagher's success on the merits of any of those

claims and her claim for injunctive relief consequently fails as a matter of law.  Likewise, the

undisputed facts amply demonstrate that Gallagher has failed to state a claim that would entitle

her to any damages.  Accordingly, Defendants are entitled to summary judgment on Counts IV and V of the Complaint.

## V.    CONCLUSION

The doctrine of *res judicata* or claim preclusion is an absolute bar to all of the claims asserted in Gallagher's Complaint as there exists: (1) identity of parties; (2) identity of issues; and (3) finality of judgment in the earlier action.  Further, even assuming that Gallagher's claims are not barred, Defendants are nevertheless entitled to summary judgment because there are no genuine issues of fact and Defendants are entitled to summary judgment as a matter of law.

Respectfully submitted,

Defendants,
Asset Management West 10, LLC, West Coast
Servicing, Inc., and Kenan Thayer

By their Attorneys,

*/s/ Shanna M. Boughton*
Bethany M. Whitmarsh, Esq. (#7318)
Shanna M. Boughton, Esq. (#8283)
LeClairRyan, P.C.
One International Place, Eleventh Floor
Boston, MA  02110
bethany.whitmarsh@leclairryan.com
shanna.boughton@leclairryan.com
Telephone: 617-502-8200
Date:  March 21, 2014            Facsimile:  617-502-8201

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2014 the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electric Filing and paper copies will be sent to those indicated as non-registered participants.

/s/ *Shanna M. Boughton*
Shanna M. Boughton